265 N.J. Super. 345 (1993)
627 A.2d 166
MAURICE TAYLOR, PLAINTIFF-APPELLANT,
v.
HOWARD L. BEYER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 6, 1993.
Decided June 24, 1993.
*346 Before Judges MICHELS, BAIME and WALLACE.
Maurice Taylor, appellant pro se, filed a letter brief.
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent (Joseph L. Yannotti, Assistant Attorney General, of counsel; Brett Rickman, Deputy Attorney General, on the brief).
The opinion of the court was delivered by WALLACE, J.S.C. (temporarily assigned).
Appellant Maurice Taylor, a New Jersey State prisoner, appeals his placement in the Management Control Unit (MCU) of New Jersey State Prison (NJSP). Taylor is serving a life sentence with a forty-five year mandatory minimum term for the offenses of murder; aggravated assault; unlawful possession of weapons; possession of weapons for unlawful purposes; criminal attempt; and robbery. On July 9, 1991, the prison administration placed Taylor into the Prehearing Detention-MCU because Taylor had been identified as being a member of a covert organization with intent on causing injury and/or death to custody staff at NJSP. MCU confinement for inmates is not imposed as punishment but is used to prevent a potentially dangerous situation within the prison. *347 It is a housing assignment within NJSP where inmates are housed after a determination by the Special Classification Committee-MCU (Committee)[1] that the inmate poses a substantial threat to the safety of others, of damage to or destruction of property or, of interrupting the operation of a State correctional facility. N.J.A.C. 10A:5-2.5(a).
Defendant contends that the Committee acted arbitrarily because they failed to inquire into the reliability of the informants and deprived him of a fair hearing. We disagree and affirm.
The background leading to this appeal may be briefly stated. Approximately one year prior to the Committee's decision giving rise to this appeal, Taylor was involved in an incident on July 29, 1990 wherein he attacked a prison officer and refused to be locked in his cell. Taylor was charged with: assault, contrary to N.J.A.C. 10A:4-4.1 [*].002; encouraging others to riot, contrary to N.J.A.C. 10A:4-4.1 [*].252; engaging in, or encouraging, a group demonstration, contrary to N.J.A.C. 10A:4-4.1 [*].253; and disorderly conduct, contrary to N.J.A.C. 10A:4-4.1 [*].306. Subsequently, he was placed in administrative segregation. Upon his release from administrative segregation, Taylor was considered for placement in the non-punitive MCU because he was perceived as a continued threat to the orderly operation of the institution. On July 10, 1991, Taylor was given notice that he would be given an in-person classification hearing "as soon as administratively possible" before the Committee. The prison administration assigned an inmate paralegal to assist Taylor during the Committee hearing, and scheduled the hearing for July 15, 1991.
At the July 15, 1991 hearing, the Committee determined that Taylor should be assigned to MCU because he posed a substantial threat to the operation of the correctional facility. The Committee based its decision on Taylor's prior institutional disciplinary record, *348 the entire contents of Taylor's classification file and the criteria record sheet. The Committee also relied upon an internal affairs investigation and other confidential documents.
Taylor's appeal to Administrator Howard L. Beyer was denied and this appeal followed.
Taylor contends that his placement into MCU did not comply with the mandate of due process. In particular, he claims that he was not given information to establish the reliability of the informants used by the Committee. Prior to the hearing, Taylor was informed that he had been identified in a confidential investigation report as a "covert planner of group violence" inclined to create total disruption within the prison. Taylor inquired into the credibility of the informants to determine the reliability of the information received. He was told, "[S]ix informants were used, and ... they were reliable on three occasions." However, Taylor's request for further details about the reliability of each informant and a summary account of the statements of the informants was denied.
We will only reverse the decision of an administrative agency if it is arbitrary, capricious and unreasonable or if it is not supported by substantial evidence in the record as a whole. Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963). After careful review of the record, we affirm.
The New Jersey Administrative Code (Code) provides the procedure for the Committee to follow in conducting placement hearings. At the hearing, "the inmate shall be informed of all adverse information bearing on the case, with the exception of information designated as `confidential.'" N.J.A.C. 10A:5-2.6(h). With regard to confidential information, N.J.A.C. 10A:5-2.6(i) provides:
Confidential information may consist of ...: 1. [i]nformants' reports; 2. [p]rofessional reports . ..; or, 3. [o]ther information that would have an adverse impact upon the inmate's mental health, create a serious risk of reprisal against the reporting individual, or seriously impede progress on a pending correctional facility investigation into such areas as narcotics trafficking, gambling rings, escape plots and other security problems.
*349 "When considering confidential informant information, [the Committee] shall inquire into the reliability of the informant and the information, and it shall utilize such information only after satisfying itself that it is reasonably reliable." N.J.A.C. 10:5-2.6(j).
Further, if the confidential information cannot be fully disclosed to the inmate, the Committee whenever practical shall inform the inmate of "the general character of the information, the details of which have been withheld ... on grounds of confidentiality." N.J.A.C. 10A:5-2.6(k).
Applying these requirements here, we are satisfied that the Committee complied with the Code. The investigator preparing the report provided information concerning the credibility of the information and the reliability of the informants to the Committee. The Committee in turn provided Taylor with information that "six informants were used," and "they were reliable on three occasions." Pursuant to N.J.A.C. 10A:5-2.6(h), information designated as confidential need not be presented to the inmate. If the confidential information cannot be fully disclosed to the inmate, the Committee is required to direct the inmate to leave the hearing while that information is discussed. N.J.A.C. 10A:5-2.6(k). Only if it is "practical," then is the inmate to be informed of the general character of the confidential information. Ibid. The criteria record sheet given to Taylor provided in part:
Subject inmate has been identified in a confidential Internal Affairs' report as a covert planner of group violence. This report further indicates that subject inmate did enter into a conspiracy with other inmates belonging to Revolutionary Groups. Their goal is to create Total Disruption within New Jersey State Prison.
....
... [T]he findings of an intense confidential Internal Affairs investigation reveals that Mr. Taylor was one of the conspirators in the August 10, 1990 incident, in which New Jersey State Prison Custody Staff was once again assaulted.
We are satisfied that the information supplied in the criteria record sheet along with the information concerning the reliability of the informants satisfied the requirements of the Code.
Moreover, we note that the confidential informant information was only a part of the information available to the Committee. *350 The adverse information against Taylor also included his disciplinary record showing nine charges within a two-year period. Taylor had been placed in administrative segregation for approximately one year of his two-and-one-half years in the prison system. Taylor was described, in the opinion of the Professional Staff, as posing a "substantial threat of interrupting the normal daily operation of this and any other institution in which General Population inmates are housed." We find there was sufficient credible evidence for the Committee to place Taylor into MCU and affirm that placement.
Furthermore, Taylor's arguments that his initial placement hearing did not comport with the mandates of due process as delineated in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and Avant v. Clifford, 67 N.J. 496, 341 A.2d 629 (1975), are misplaced. Both Wolff and Avant addressed the procedural safeguards to be followed prior to the imposition of major prison discipline. "MCU confinement is not imposed as punishment but is used to head off a potentially dangerous situation within the prison." Perez v. Neubert, 611 F. Supp. 830, 837 (D.N.J. 1985). It is important to note that an inmate assigned to MCU has not necessarily received any disciplinary charges but, rather is an inmate who, in the opinion of the Committee, requires isolation from the general prison population because he poses a danger to himself or others and/or has substantial, but negative, influence on other inmates. Accordingly, the procedural safeguards applicable to disciplinary hearings are not the same safeguards applicable to MCU confinement. Both Wolff and Avant are therefore, not applicable to the present appeal.
In affirming the decision below we are mindful that our Supreme Court recognized in Avant:
The undivided responsibility and authority of Commissioner and Department for the maintenance of security and order in the institutions represent an interest of the state as compelling as is the enforcement of law in general. "One of the primary functions of government is the preservation of societal order through enforcement of the criminal law, and the maintenance of penal institutions is an essential part of that task. The identifiable government interests at stake in this task are the preservation of internal order and discipline, the maintenance of *351 institutional security against escape or unauthorized entry, and the rehabilitation of the prisoners."
[Avant v. Clifford, supra, 67 N.J. at 561, 341 A.2d 629 (citation omitted).]
Affirmed.
NOTES
[1] The record utilizes the term, "the Special Classification Committee MCU," although the Administrative Code utilizes "the Management Control Unit Review Committee."