737 A.2d 183 (1999)
324 N.J. Super. 576
Anthony RUSSO, Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 1999.
Decided September 28, 1999.
*184 Appellate submitted a pro se brief.
John J. Farmer, Jr., Attorney General, for respondent (Joseph L. Yannotti, Assistant Attorney General, of counsel; Jayroe Wurse, Deputy Attorney General, on the brief).
Before Judges BAIME and EICHEN.
The opinion of the court was delivered by BAIME, P.J.A.D.
Anthony Russo, a prison inmate, appeals from a decision of the Department of Corrections finding him guilty of operating an unauthorized business for profit, misusing electronic equipment, and improperly accepting *185 something of value from another person (N.J.A.C. 10A:4-4.1(a).705, .009 and.752). An aggregate sanction of thirty days detention, 545 days administrative segregation, and loss of 365 days commutation time was imposed. Although appellant challenges the sufficiency of the evidence, the principal question presented is whether the prohibition against double jeopardy bars successive prison disciplinary proceedings for the same conduct. We hold that it does not.

I.
We need not recount the facts at length. An administrative search of appellant's cell revealed large quantities of gambling paraphernalia and 221 packs of cigarettes. In addition, wordprocessors belonging to appellant and his cellmate were confiscated along with thirty-four diskettes. Appellant and his cellmate were charged with conducting a gambling pool (N.J.A.C. 10A:4-4.1(a).602) and possession of unauthorized items (N.J.A.C. 10A:4-4.1(a).210). Appellant was acquitted of conducting a gambling pool because his cellmate confessed that the gambling paraphernalia found in their living quarters belonged to him. However, appellant was found guilty of possession of unauthorized items, the cigarettes. Sanctions were imposed with respect to that infraction.
Although the exact chronology of events is not entirely clear, it appears that Internal Affairs investigators reviewed the diskettes following disposition of the original charges. The diskettes disclosed that appellant was conducting a gambling operation in which inmate customers paid for the privilege of playing the odds with cigarettes. They additionally revealed that appellant was purchasing large quantities of cigarettes using outside agents who would pay by credit card. The cigarettes were sold to inmates who either paid appellant directly or directed relatives or associates to pay him through outside agents. The diskettes also disclosed that appellant was routinely accepting payment for assisting inmates in their appeals and related litigation. Based upon this evidence, appellant was found guilty of the charges that are the subject of this appeal.

II.
Initially, we are satisfied that the Department's factual findings are supported by substantial, credible evidence. See Jacobs v. Stephens, 139 N.J. 212, 222, 652 A.2d 712 (1995); Mayflower Securities Co., Inc. v. Bureau of Securities, 64 N.J. 85, 92-93, 312 A.2d 497 (1973); Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965). Indeed, the record reeks of appellant's guilt. Considering the proofs in their entirety, it cannot fairly be said that the Department went "so wide of the mark" that a mistake must have been made. Cf. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). We view as frivolous appellant's claim of evidential insufficiency. See R. 2:11-3(e)(1)(D).

III.
More troublesome is appellant's argument that the administrative prosecution was barred by the double jeopardy prohibition. Two related issues are presented. The threshold question is whether the double jeopardy clause is applicable to successive prison disciplinary proceedings. The second is whether the disciplinary proceedings instituted against appellant pertained to the same offense or conduct. Because protection under the New Jersey Constitution, art. I, ¶ 11, is generally coextensive with that afforded by its federal counterpart, see State v. Womack, 145 N.J. 576, 582, 679 A.2d 606, cert. denied, 519 U.S. 1011, 117 S.Ct. 517, 136 L.Ed.2d 405 (1996); State v. Koedatich, 118 N.J. 513, 518, 572 A.2d 622 (1990); State v. Churchdale Leasing, Inc., 115 N.J. 83, 107, 557 A.2d 277 (1989); State v. Barnes, 84 N.J. 362, 370, 420 A.2d 303 (1980); State v. Rechtschaffer, 70 N.J. 395, 404, 360 A.2d 362 (1976), we need not distinguish between *186 the two sources of rights in our analysis of these issues.

A.
The double jeopardy clause bars a second prosecution for the same offense after an acquittal. It protects against a second prosecution for the same offense after conviction. And it bars multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-64 (1969). The bedrock principle is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual, thus subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, and enhancing the possibility that he may be found guilty. Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223-24, 2 L.Ed.2d 199, 204 (1957). Prison disciplinary proceedings are not part of the criminal trial process. There is nevertheless no state interest in the imposition of prison discipline absent procedural fairness. Avant v. Clifford, 67 N.J. 496, 522, 341 A.2d 629 (1975). We thus look to the nature of the prison disciplinary process and the character of the sanctions imposed to determine whether the demands of procedural fairness compel application of double jeopardy principles.
The principal thrust of appellant's argument is that he was twice punished for the same conduct, and that the sanctions imposed constituted significant penal restraints upon his liberty. The most appropriate starting point for our analysis is thus the lengthening line of decisions equating civil and administrative penalties with criminal sentences for double jeopardy purposes. In United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the United States Supreme Court held that a civil or administrative penalty imposed in addition to a criminal sentence is violative of double jeopardy protections when it is based on the same conduct as the criminal charge and is punitive, rather than remedial, in nature. Id. at 446-48, 109 S.Ct. at 1900-02, 104 L.Ed.2d at 500-02. That holding was recently disavowed in Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). As explained in Hudson, a court must first ask "whether the legislature `in establishing the penalizing mechanism, indicated either expressly or impliedly, a preference for one label or the other.'" Id. at____, 118 S.Ct. at 493, 139 L.Ed.2d at 459 (quoting United States v. Ward, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749 (1980)). Even in those cases where the legislature has expressed an intention to establish a civil penalty, a court must inquire "whether the statutory scheme [is] so punitive in purpose or effect" as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." Ibid. (quoting United States v. Ward, 448 U.S. at 248-49, 100 S.Ct. at 2641, 65 L.Ed.2d at 749 & Rex Trailer Co. v. United States, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149, 155 (1956)). The Court enunciated the following guidelines applicable to such an inquiry:
(1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishmentretribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."
[Ibid. (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644, 661 (1963)).]
The Court added that "`only the clearest proof' will suffice to override legislative *187 intent and transform what has been denominated a civil remedy into a criminal penalty." Ibid. (quoting United States v. Ward, 448 U.S. at 249, 100 S.Ct. at 2641, 65 L.Ed.2d at 742).
Within this analytical framework, we find substantial support for the proposition that the double jeopardy prohibition does not per se bar successive prison disciplinary prosecutions for the same infraction. We are concerned here with the application of regulations adopted by the Commissioner of the Department of Corrections. The Legislature has vested in the Commissioner broad discretionary power to "[d]etermine all matters of policy and regulate the administration of [penal] institutions...." N.J.S.A. 30:1B-6(g). Although neither the Legislature nor the Department has labeled prison disciplinary proceedings as either criminal or civil, we have never treated such proceedings as part of the criminal process. See Blyther v. New Jersey Dep't of Corrections, 322 N.J.Super. 56, 730 A.2d 396 (App.Div. 1999); Taylor v. Beyer, 265 N.J.Super. 345, 627 A.2d 166 (App.Div.1993). A criminal prosecution is a judicial proceeding that vindicates the community's interests in punishing criminal conduct. United States v. Whitney, 649 F.2d 296, 297 (5th Cir.1981). In contrast, the prison disciplinary process determines whether an inmate has violated the conditions of his incarceration and it is designed to advance the remedial goal of maintaining institutional order and security. While punitive and remedial interests are tightly intertwined in the prison setting, disciplinary sanctions do not constitute additional punishment. See Illinois v. Jones, 301 Ill. App.3d 608, 234 Ill.Dec. 894, 703 N.E.2d 994, 996 (1998). Although disciplinary sanctions may affect the level of restraints imposed on an inmate and may alter privileges earned, they do not directly change the original term or sentence imposed. Moreover, the types of prison conduct that are subject to disciplinary sanctions do not necessarily correspond to statutory or common law crimes.
Practical considerations militate against rigid application of double jeopardy principles to prison disciplinary proceedings. Prisons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment. "`[D]isciplinary proceedings take place in a highly charged atmosphere'" where prison officials "`must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.'" Meeks v. McBride, 81 F.3d 717, 722 (7th Cir. 1996) (quoting Superintendent, Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985)). If an acquittal in a prior hearing were to preclude a subsequent hearing on the same charge, "the overriding interest of prison administrators to act swiftly to maintain institutional order could be compromised in the interest of developing the evidence needed to obtain a conviction." Ibid. To thus apply in rigid fashion the full panoply of double jeopardy protections would impose an extreme burden on prison administrators.
Our courts have not addressed directly the question presented by this appeal. But see State v. Widmaier, 157 N.J. 475, 724 A.2d 241 (1999), State v. Black, 153 N.J. 438, 710 A.2d 428 (1998), and New Jersey Parole Bd. v. Mannson, 220 N.J.Super. 566, 533 A.2d 58 (App.Div. 1987), which deal with somewhat related issues. However, our research discloses numerous federal court decisions holding that double jeopardy does not apply to prison disciplinary proceedings. See, e.g., Meeks v. McBride, 81 F.3d at 722; United States v. Brown, 59 F.3d 102, 103-04 (9th Cir.1995); Garrity v. Fiedler, 41 F.3d 1150, 1152-53 (7th Cir.1994), cert. denied, 514 U.S. 1044, 115 S.Ct. 1420, 131 L.Ed.2d 303 (1995); Lucero v. Gunter, 17 F. 3d 1347, 1351 (10th Cir.1994); United States v. Newby, 11 F.3d 1143, 1144-45 (3d Cir. 1993), cert. denied, 511 U.S. 1087, 114 S.Ct. 1841, 128 L.Ed.2d 468 (1994); United *188 States v. Rising, 867 F.2d 1255, 1259 (10th Cir.1989); Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir.), cert. denied, 479 U.S. 830, 107 S.Ct. 115, 93 L.Ed.2d 62 (1986); Garcia v. United States, 769 F.2d 697, 700 (11th Cir.1985); Kerns v. Parratt, 672 F.2d 690, 691-92 (8th Cir.1982); Fano v. Meachum, 520 F.2d 374, 376 n. 1 (1st Cir.1975), rev'd on other grounds, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); United States v. Herrera, 504 F.2d 859, 860 (5th Cir.1974); United States v. Stuckey, 441 F.2d 1104, 1105-06 (3d Cir.), cert. denied, 404 U.S. 841, 92 S.Ct. 136, 30 L.Ed.2d 76 (1971); United States v. Apker, 419 F.2d 388 (9th Cir.1969); Hamrick v. Peyton, 349 F.2d 370, 372 (4th Cir.1965); Gibson v. United States, 161 F.2d 973, 974 (6th Cir.1947). While many of these decisions deal specifically with criminal prosecutions following disciplinary proceedings for the same conduct, essentially the same policy considerations pertain to the precise issue here.
We stress the limited contours of our holding. We, of course, recognize that there is no "iron curtain" drawn between the constitution and prison inmates, and that prisoners cannot be "deprived of life, liberty, or property without due process of law." Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935, 950-51 (1974); see also Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); New Jersey Parole Bd. v. Byrne, 93 N.J. 192, 460 A.2d 103 (1983); Avant v. Clifford, 67 N.J. 496, 341 A.2d 629. We do not suggest that in all cases and under all circumstances double jeopardy considerations can have no applicability in prison disciplinary settings. Wholly apart from the express provisions of the federal and state constitutions, our courts are duty-bound to insure that administrative proceedings are conducted in accordance with common notions of fundamental fairness. Our courts have long exercised their authority to reverse arbitrary and capricious administrative determinations. See Brady v. Board of Review, 152 N.J. 197, 210-11, 704 A.2d 547 (1997); George Harms Const. Co., Inc. v. New Jersey Turnpike Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994); Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980). Perhaps there may arise cases in which it would be fundamentally unfair to permit repeated disciplinary prosecutions and sanctions for the same offense or conduct. Suffice it to say, we are content to decide the case before us, and here we find no sound basis for rigid application of double jeopardy protections.

B.
We add for the sake of completeness that the offenses charged in the original disciplinary proceedings were not the same offenses for which appellant was ultimately found guilty and were not based upon the same conduct.
We have no occasion here to resolve questions concerning the appropriate test to be applied in determining what constitutes the same conduct or same offense for double jeopardy purposes. These issues were covered exhaustively by Judge Stern in State v. Capak, 271 N.J.Super. 397, 638 A.2d 918 (App.Div.), certif. denied, 137 N.J. 164, 644 A.2d 612 (1994). In a meandering journey from Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), to Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and finally to United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the United States Supreme Court seems to have settled on a bright-line, but perhaps mechanistically sterile, approach centering upon whether "each offense contains an element not contained in the other." Id. at 696, 113 S.Ct. at 2856, 125 L.Ed.2d at 568. In contrast, our Supreme Court has said that "[i]f the same evidence used in the first prosecution is the sole evidence in the second, the prosecution of the second offense is barred." State v. DeLuca, 108 N.J. 98, 107-08, 527 A.2d 1355 (1987); see *189 also State v. Yoskowitz, 116 N.J. 679, 563 A.2d 1 (1989). However, the Court's statement of the applicable test was expressed before the United States Supreme Court's last word on the subject.
Whatever test is applied and however it is phrased, we are satisfied that the disciplinary infractions for which appellant was found guilty, while perhaps overlapping the prior charges, were essentially different. Clearly, appellant's sale of cigarettes and legal services constituted transactions wholly unrelated to the gambling enterprise which was the subject of the earlier proceedings. Thus, the subsequent disciplinary proceedings and sanctions pertained to different offenses and the double jeopardy prohibition was not applicable.
Affirmed.