**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1241-17T1

JUSTICE R. ALLAH,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted February 3, 2020 – Decided March 12, 2020

Before Judges Sabatino, Geiger and Natali.

On appeal from the New Jersey Department of Corrections.

Justice R. Allah, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Marvin L. Freeman, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Justice Rasideen Allah is incarcerated at the New Jersey State Prison in Trenton and is serving a life sentence for murder, with a thirty-year period of parole ineligibility. He appeals from a May 30, 2017 final determination of the Department of Corrections ("Department"), issued after we remanded the matter for a series of rehearings, that placed him in the Management Control Unit (MCU).[1] We affirm in part, and remand in part.

I.

We briefly discuss the procedural and factual history of appellant's initial placement in the MCU, and subsequent appeals, to provide context for our opinion.

On November 20, 2006, pursuant to N.J.A.C. 10A:5-2.6(b),[2] the Department provided appellant with what is known as a "criteria record sheet"

---

[1] The MCU is "a close custody unit to which an inmate may be assigned if the inmate poses a substantial threat to the safety of others; of damage to or destruction of property; or of interrupting the operation of a State correctional facility." N.J.A.C. 10A:5-1.3; see also N.J.A.C. 10A:5-2.5(a).

[2] At the time of the initial hearing, N.J.A.C. 10A:5-2.6(b) provided that a criteria record sheet shall "[d]elineate the criteria, which will be utilized in determining the inmate's suitability for the [MCU]"; "[p]rovide an outline of the major factors in the particular inmate's case history"; "[c]ontain concise statements of the factual basis, not merely conclusions, on which the recommendation of [MCU] placement is based"; and "[n]ot contain information deemed confidential." That language was removed, effective October 5, 2015.

A-1241-17T1

giving him written notice to appear before the Department's Management Control Unit Review Committee ("MCURC" or "Committee") to determine whether it was appropriate to place him in the MCU. On that criteria record sheet, the Department maintained: 1) appellant was serving a maximum term of life and a minimum term of thirty years for murder; 2) institutional records showed that he had a "substantial disciplinary record" with thirty-one disciplinary infractions including encouraging group demonstrations, possession of Security Threat Group (STG) materials, fighting, assault, disruptive conduct, and use of narcotics; and 3) recent charges included "attempting to obtain a cellular telephone(s), attempting to engage in conduct that disrupts institutional security, attempting to give and/or obtain money from the family of another inmate, attempting to perpetuate a fraud, and unauthorized use of the mail or telephone" for which appellant received a total of 820 days of administrative segregation.

The Committee conducted appellant's initial MCU hearing on January 25, 2007. A January 11, 2007 memorandum from Donald Mee, Jr., then Assistant Superintendent, identified the following documents considered by the Committee at that hearing: 1) a memo dated January 11, 2007; 2) minutes from a January 10, 2007 meeting; 3) minutes from a January 25, 2007 meeting; 4) a

review of confidential information dated January 19, 2007; 5) a December 19, 2006 report by Flora DeFilippo, Ph.D.; and (6) appellant's submissions dated December 14, 2006, and January 24, 2007.

In the aforementioned January 19, 2007 review of confidential information, Mee concluded:

> It is clear from this investigation that [appellant] established an extremely elaborate scheme to include his family, among others, to introduce a variety of contraband to include weapons inside the security perimeter of New Jersey State Prison. This plan also included a process to circumvent the institutional remit and mail process as well as the secured inmate telephone system.

Following the hearing, the Committee directed that appellant be placed in the MCU. In support of its decision, the Committee found:

> The information that has been provided to the MCURC depicts an extremely elaborate sophisticated system that was developed by [appellant] that circumvented institutional safeguards with respect to financial transactions as well as the mail and telephone systems. The scheme effectively laundered money that was utilized to introduce a variety of contraband into the security perimeter of New Jersey State Prison.
>
> What is of serious concern to the MCURC is the extent and complexity of the system developed by [appellant] . . . . This activity poses a threat to the safety and security of the New Jersey State Prison. This illegal contraband creates a fierce competition between the inmate population.

4

After an unsuccessful administrative appeal, appellant appealed to us, and we affirmed in a per curiam opinion. See Allah v. N.J. Dep't of Corr., No. A-4422-06 (App. Div. Jun. 3, 2008). On September 9, 2008, the Supreme Court denied certification. Allah v. N.J. Dep't of Corr., 196 N.J. 463 (2008).

Since petitioner's initial placement, the Committee has conducted both annual and routine reviews. Following each hearing, the Committee determined it was appropriate to maintain appellant's placement in the MCU. Petitioner challenged a February 24, 2011 final determination of the Department continuing his placement in the MCU. We affirmed that determination, again noting there was substantial, credible evidence in the record to support the agency's decision. See Allah v. N.J. Dep't of Corr., No. A-3837-10 (App. Div. June 21, 2012). The Supreme Court denied certification. Allah v. Dep't of Corr., 213 N.J. 538 (2013).

In a September 12, 2016 unpublished decision, we addressed petitioner's appeal of six final determinations of the Department that challenged additional routine and annual reviews conducted by the Committee between June 2012 and January 2014 that affirmed his continued placement in the MCU. See Allah v. New Jersey Dep't of Corr., No. A-0330-12 (App. Div. Sept. 12, 2016). We concluded that the Department acted arbitrarily, capriciously, and unreasonably

5

when it placed appellant in the MCU because it had come to light that all three members of the Committee had not reviewed relevant information prior to their vote as required by N.J.A.C. 10A:5-2.4(a).  We also determined, however, that because there was "substantial evidence that petitioner's placement in the MCU was warranted," it would be inappropriate to summarily release appellant from the MCU.[3]  Instead, we remanded the matter to the Department with clear instructions:

> that the initial placement hearing be repeated.  The entire [C]ommittee shall consider all of the evidence that was before the [C]ommittee at the initial hearing in 2007, and all members of the [C]ommittee shall vote upon whether or not petitioner shall be placed into the MCU.  No new facts may be introduced at the hearing; only that evidence that was placed before the [C]ommittee at the initial hearing in 2007 may be considered.

We further instructed that the "composition of the [C]ommittee shall be that as the law required at the time of the initial hearing" and that new members,

---

[3]  We acknowledged in a footnote in our September 12, 2016 opinion that appellant had been released into the general population on or about March 18, 2016.  We nevertheless noted that since the State did not argue or indicate that the issues raised in that appeal were moot, we would issue the opinion as scheduled.  In his merits brief on this appeal, appellant maintains that the issues under review are not moot because the Committee's determination may have an effect on future parole hearings, a position the State does not challenge.

if needed, shall be chosen in compliance with N.J.A.C. 10A:5-2.2(a) as it existed in 2007.

We also directed the Department to rehear any review hearing occurring before June 5, 2009 that concerned appellant and in which one Committee member, Dr. DeFilippo, participated under the same terms as described above.[4] As to the six hearings being challenged on appeal, the court found that there was "no evidence that any of those hearings suffered from the same infirmities as did the initial hearing" and, accordingly, we affirmed those Department final decisions.

Despite our instruction in September 2016 that the Department conduct the remanded rehearings within forty-five days, the remanded proceedings did

---

[4] At a June 5, 2009 deposition in an unrelated federal case, Dr. DeFilippo testified that she was unaware she had served as a member of the Committee and believed she had been merely "attending" the review hearings as the Department's "mental health representative." Dr. DeFilippo admitted she never: evaluated any evidence placed before the Committee concerning an inmate; had never made any recommendations about whether an inmate should be placed or should continue to be placed in the MCU; had never voted on or observed other Committee members vote on whether to release an inmate from or continue an inmate in the MCU; was unaware of the standards for admitting an inmate into the MCU; and did not have "any idea" about the process the MCURC used to reach a decision. Dr. DeFilippo had only "a general idea" of what routine and annual review hearings were about and was not familiar with those sections of the New Jersey Administrative Code addressing Management Control Units.

not commence until May 8, 2017. Listed attendees at the proceeding included David Richards, Assistant Superintendent-Chairperson; Lieutenant Clermont,[5] Custody Supervisor; Rakima Stokes-Little, Education Department; and Crystal Raupp, Social Work Supervisor-Recorder, all new members as none of the original Committee members that participated in the 2007 decision were available. Appellant did not request the assistance of counsel substitute.

A decision was issued the same day and the Committee found that appellant "pose[d] a substantial threat to the safety of others and the secure operation of the facility if [he was] housed in the general population." The decision noted that the Committee only considered evidence that was before it at the initial hearing on January 25, 2007, and that the Committee membership was consistent with the requirements of N.J.S.A. 10A:5-2.2 at the time of the initial proceedings.

Appellant filed an administrative appeal which Raymond Royce, Associate Administrator, denied on May 30, 2017. Associate Administrator Royce concluded that: 1) there "was compliance with N.J.A.C. 10A:5-2.2 through N.J.A.C. 10A:5-2.8 as it existed in January 2007 and in accordance with

---

[5] Intending no disrespect, we identify Lieutenant Clermont by his title and surname as his first name was not provided in the record.

the court's decision dated September 12, 2016 as [appellant was] afforded a meaningful rehearing and the opportunity to present evidence as it existed at the time of [his] initial hearing"; 2) "the decision of the MCU Chairperson to confirm [appellant's] initial placement in the MCU was based on substantial evidence that was available to [the] [C]ommittee at the time of [appellant's] initial placement"; 3) and "the decision was appropriate based on [appellant's] case at the time of [his] initial placement in the MCU."

On appeal, appellant argues that the decision to again place him in the MCU was arbitrary, capricious, and unreasonable because:  1) the Department allowed parties to serve on the MCU who were "ineligible" to do so in 2007; 2) the Committee relied on the criteria record sheet in the initial and all subsequent placement hearings that contained inaccurate information; and 3) the Committee again relied on a March 1, 2007 Special Investigation Division report submitted after his initial placement despite our mandate to use only what was available at the time of the initial hearing.

II.

"An appellate court ordinarily will reverse the decision of an administrative agency only when the agency's decision is 'arbitrary, capricious or unreasonable or . . . is not supported by substantial credible evidence in the

9

record as a whole.'" Ramirez v. N.J. Dep't of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). Furthermore, "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to . . . deference.'" Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). The Legislature has provided for the broad exercise of the Department's discretion in all matters regarding the administration of a prison facility. Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 583 (App. Div. 1999).

### III.

In his first point on appeal, appellant contends that the Committee's decision is invalid because the members who conducted the rehearing were ineligible to serve as Committee members in 2007. We disagree.

N.J.A.C. 10A:5-2.2, as it existed in 2007, required that the Committee be composed of the Associate Administrator or Assistant Superintendent, a representative from the Education or Social Services Department, and the person designated as the Supervisor of the MCU. When we remanded the matter, we noted that if the original Committee members were not available, new members

shall be chosen as replacements in compliance with N.J.A.C. 10A:5-2.2 as it existed in 2007. Here, the Committee noted that "[t]here were no remaining members of the original [C]ommittee available therefore, new members were assigned to the [C]ommittee in compliance with the regulation as it existed in January 2007."

The Committee, which consisted of Richards, the Assistant Superintendent, Clermont, the Custody Supervisor, Stokes-Little, a representative from the Education Department, and Raupp, a Social Work Supervisor, satisfied the regulatory requirements. Appellant's argument that the rehearing could only have been conducted with individuals who held the appropriate titles back in 2007 has no support in the relevant statute or regulations and is contrary to our instruction for the Department to choose new members as necessary.

IV.

In his second argument, appellant maintains that the May 30, 2017 final decision should be reversed because the Committee considered the criteria record sheet which contained "inaccurate information." We disagree, as the record establishes the Committee did not rely on any inaccuracies contained in the criteria record sheet when it rendered its decision on remand.

Indeed, during the rehearing, appellant raised the issue of inaccuracies listed in the criteria record sheet and specifically that he was adjudicated not guilty of the charges of "attempting to perpetrate a fraud, give or taking money from another, and involved in criminal activities." The Chairman responded that if there were any such charges, the Committee would not rely upon them when resolving the matter and any inaccuracies would be noted in the Committee's decision.

As represented to appellant, the Committee in its decision acknowledged that appellant "was notified that if the original criteria record sheet had any inaccurate disciplinary decisions they would be noted and not used in the [C]ommittee's decision." It also specifically stated that the charges of fraud and attempting to give or receive money were dismissed and were not relied upon by the Committee. The Committee noted, however, that appellant's extensive disciplinary record contained "numerous" other infractions, including the serious charges from 2006 involving the development of a "sophisticated system that was designed to circumvent institutional safeguards concerning contraband," namely cellular phones. We are satisfied based on our review of the administrative record that the Committee did not rely on inaccurate information in the criteria record sheet.

12

## V.

Next, appellant argues that the Department's final decision was arbitrary and capricious because the Committee relied upon a March 1, 2007 report, which post-dated the Committee's initial January 2007 decision. Again, the record simply does not support appellant's claims.

To determine whether an inmate must be assigned to the MCU, the Committee considers the following criteria specified by regulation:

1. Disciplinary records during the inmate's present term of confinement and any previous terms served. Weight shall be assigned to this criterion where there are a substantial number of minor charges, or one or more charges of a serious nature;

2. Past criminal offenses, including those for which incarcerated, which indicate the capability and propensity to commit or precipitate serious acts of disruption or violence;

3. Number and location of previous institutionalizations including the disciplinary records, progress reports, classification reports, or any other records which indicate involvement in serious misbehavior;

4. Reports by professional staff (for example, psychologists, social workers, psychiatrists);

5. Reports indicating present involvement in criminal activities in the community or within the correctional facility;

13

6. Evidence of an attitude which indicates an unwillingness to follow rules and obey orders;

7. Inability to maintain a satisfactory work record as indicated in reports by work supervisors and/or frequency of job changes;

8. Information indicating unsatisfactory adjustment to, or performance in, treatment or rehabilitative programs; and

9. Evidence of the inmate's inability or unwillingness to house with other inmates in a nondisruptive and nondestructive manner.

[N.J.A.C. 10A:5-2.4(a).]

At the time of appellant's initial 2007 hearing, N.J.A.C. 10A:5-2.10(a) required that an inmate's placement into the MCU be reviewed at a formal review hearing at least every three months.[6] During that hearing, the Committee was required to review the information upon which the decision was based to place the inmate into the unit, as well as reports of his conduct while in the unit. See N.J.A.C. 10A:5-2.10(e). The Committee was not permitted to release an inmate from an MCU until he ceased being a substantial threat to the safety of others, property, and to the orderly operation of the prison. See N.J.A.C. 10A:5-2.10(f).

---

[6] N.J.A.C. 10A:5-2.10 has since been modified, effective October 5, 2015.

An inmate's placement in the MCU also had to be reviewed annually to determine whether his release from the unit was appropriate. See N.J.A.C. 10A:5-2.11(a).[7] At the annual review hearing, the inmate had the initial burden of demonstrating he had participated in the requisite jobs, and educational and recreational programs; complied with any criteria mandated by the MCURC; had not committed any "asterisk" acts[8]; and "[a]greed to reaffirm the obligation to adhere to the rules and regulations for inmate behavior." N.J.A.C. 10A:5-2.11(b).

During the rehearing, the Chairman specifically noted several times that the Committee would not consider reports submitted after January 2007. And, in its final decision, the Committee stated that it "only considered . . . the evidence that was before the Committee at the initial hearing of January 25, 2007." As the Committee noted, its decision was based on appellant's disciplinary history which included a finding that he attempted to obtain a cellular phone and engage in conduct which disrupts the orderly running of the institution and unauthorized use of the mail or telephone, his criminal offense

---

[7] N.J.A.C. 10A:5-2.11 was repealed, effective October 5, 2015.

[8] Prohibited disciplinary acts preceded by an asterisk "are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1, -5.1.

of murder "which indicates the capability and propensity to commit or precipitate serious acts of disruption or violence," and the November 8, 2006 confidential Special Investigation Division report that Mee detailed in his January 19, 2007 review of confidential information suggesting that appellant was "involved in the criminal activity of developing a sophisticated system that was designed to circumvent institutional safeguards concerning contraband."

Thus, the Committee's decision to assign appellant to the MCU was not arbitrary or capricious. Its determination was supported by credible evidence in the record as of the January 25, 2007 hearing that demonstrated appellant posed a substantial threat to the safety of others and posed a substantial threat of interrupting the operation of a State correctional facility. See N.J.A.C. 10A:5-2.5.

## VI.

Appellant also argues that the Committee denied him a copy of the 2007 Administrative Code, and improperly precluded him from confronting the former Acting Administrator and a Special Investigations Division member at the rehearing. These contentions are without merit.[9]

---

[9] We note that appellant raised his confrontation argument for the first time in his reply brief and only mentioned the Department's purported failure to provide

As to appellant's argument that he was denied a copy of the Administrative

Code, Associate Administrator Royce found that "[t]here [was] no mention nor

reflection in the official record of [appellant] being denied a request for a copy

---

him with the Administrative Code in his factual statement in his merits brief without accompanying legal argument. Procedurally, raising a substantive issue for the first time in a reply brief is not permitted. See State v. Smith, 55 N.J. 476, 488 (1970); Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001). We are also aware that appellant received a copy of the entire section of the Administrative Code pertaining to the MCU in the Department's appendix on appeal. We also granted his motion to file a supplemental letter citing to those specific sections of the Administrative Code he referred to in his appellate briefs. Appellant contended in his supplemental letter that he was not properly provided all documents required by N.J.A.C. 10A:5-2.6(b)(1) to (4) prior to his initial hearing, the forms used by the Committee during the rehearing were not the same as those used in the initial hearing in accordance with N.J.A.C. 10A:5-2.3 and N.J.A.C. 2.6(r) and (s), the Committee members chosen for the rehearing were precluded from participating pursuant to N.J.A.C.10A:5-2.2(a), and the Department violated N.J.A.C. 10A:5-2.6(b)(3) when it conceded that his criteria record sheet contained incorrect information. As to the argument that he was not provided all documents required by the regulation, we noted that the Department provided appellant with a comprehensive and compliant criteria record sheet that indicated appellant posed a threat to the safety and security of the prison. With respect to the use of different forms, our review of the record similarly indicated that the Committee properly relied on the substantial credible evidence in the record to determine that appellant's placement in the MCU was warranted. Also, as discussed, all new members chosen for the Committee rehearing satisfied the regulatory requirements as they existed in 2007. Finally, we again disagree with appellant's final argument as the record establishes the Committee did not rely on any incorrect information contained in the criteria record sheet when it rendered its decision. Thus, we find no legal or factual support for appellant's supplemental regulatory arguments.

of [Section] 10A [of the Administrative Code]." Royce further found that appellant was "offered the assistance of [l]aw [l]ibrary [c]lerks to provide legal reference materials, services[,] and supplies[,] as well as to act as a counsel substitute to assist in the adequate collection and presentation of facts to which [he] declined." Regarding the confrontation of witnesses, Royce also found that "there were no witnesses who testified during [appellant's] initial MCU placement hearing in 2007" and that "[n]ew witnesses [at the rehearing] would constitute new evidence that was not available at [appellant's] initial MCU placement hearing," in accordance with our remand instructions. We see no reason to disturb those findings of the Department.

## VII.

We accordingly affirm the Department's final decision placing appellant in the MCU as there was substantial credible evidence in the record supporting its decision. We must remand the matter again, however, because the Department failed to comply with that portion of our remand to rehear any proceedings beyond the initial placement hearing in which Dr. DeFilippo participated but failed to review evidence or vote.

We specifically instructed the Department to repeat all of appellant's routine and annual reviews by the Committee in which Dr. DeFilippo

participated between the time of appellant's initial placement in the MCU and her June 5, 2009 deposition, which include reviews conducted on May 18, 2007, July 2, 2007, October 10, 2007, January 8, 2008, March 27, 2008, June 26, 2008, October 2, 2008, December 30, 2008, and March 30, 2009. Those rehearings are to be conducted and completed within ninety days.

To the extent we have not specifically addressed any of appellant's remaining arguments, it is because we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D), (E).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1241-17T1