**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1999-22

LAQUANE CURRY,

     Appellant,

v.

NEW JERSEY
DEPARTMENT OF
CORRECTIONS,

     Respondent.

_____

          Submitted September 12, 2024 – Decided October 8, 2024

          Before Judges Sabatino and Jacobs.

          On appeal from the New Jersey Department of Corrections.

          Laquane Curry, appellant, pro se.

          Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Dorothy M. Rodriguez, Deputy Attorney General, on the brief).

PER CURIAM

Incarcerated person, Laquane Curry, appeals the January 17, 2023 final agency decision of the Department of Corrections (DOC) upholding a hearing officer's determination that he committed prohibited act *.803/*.002, attempting to assault any person, in violation of N.J.A.C. 10A:4-4.1(a)(1)(ii), (xxiv). We affirm.

We derive facts from the DOC "preliminary incident," "special custody," "disciplinary," and "use of force" reports, adjudication records, appellant's oral and written statements, and the parties' respective pleadings. There is no video or audio recording of the incident in the record.

On January 9, 2023, Curry was housed at South Woods State Prison. In a purported effort to receive medical attention for chest pain, Curry asked Lieutenant J. Inman "what he need[ed] to do to get at custody staff and get them into his cell." With this, Lieutenant Inman notified medical staff as to the medical emergency. Because Curry was housed in the Emergency Confinement Unit (ECU) due to his "assaultive history," prison protocol required medical personnel to respond and enter Curry's cell.

A team of correction officers was assembled and prepared to enter the cell, telling Curry to "cuff up." Curry remained on his bed, refusing to comply with commands of the officers and accompanying medical staff. Wary of a perceived

2

excessive number of officers who arrived in response, Curry stated he no longer wanted medical attention. Notwithstanding Curry's change of mind, officers proceeded to enter his cell. The first to enter was Officer Velez. As Velez made entry, Curry purportedly jumped from his bed, charged and "swung at [him] with [a] clenched fist." In response, Velez struck Curry in the mouth with a closed fist. Other officers then brought Curry to the ground and placed him in restraints. They then transported Curry to a medical unit "where he was evaluated and received [an] EKG."

Both Officer Velez and Curry incurred injuries from their encounter. Velez sustained injury to his right hand and left knee. In a DOC "special" medical report, it was noted that Curry had cuts and swelling to his "left top and bottom lips," "redness and scratch" on his left shoulder, and "chest redness." Aside from these injuries, the report reads, "[i]nmate has no other cuts, scrapes, bruises, or bleeding . . . at this time." Curry was then "medically cleared for constant watch."

The next day, prison authorities served Curry with an "attempting to assault" disciplinary charge and referred the case to a hearing officer. At a hearing before Disciplinary Hearing Officer (DHO) Zimmerman, Curry pleaded not guilty to having committed the charged prohibited act. Substitute counsel

3

for Curry submitted a two-page written statement and requested leniency. In his statement, Curry acknowledged telling Lieutenant Inman he was having chest pains. However, he claimed more than twenty officers arrived in response, whereupon he turned around and walked toward a window in his cell. Officers then pushed their way in. Curry contended that Officer Velez hit him in the mouth and other officers kicked him as he lay prone for over a two-minute period. He also claimed that the number of responding officers was excessive and in violation of prison protocol. In testimony, Curry alleged he was assaulted and that his cell "door should've never been opened." Curry declined the opportunity to call witnesses on his behalf or to confront adverse witnesses via cross-examination.

Five correction officers submitted a countervailing rendition of events in the form of "special custody" reports. Specifically, the officers cast Curry as "combative" and the "aggressor," maintaining he was "not respons[ive]" to verbal commands to be cuffed and brought for medical examination. Also submitted to the DHO were five "use of force" reports, a preliminary report, and a disciplinary report. Those reports uniformly described Curry as the aggressor and attested to the need for additional manpower based on his assaultive history within the institution.

4

DHO Zimmerman found Curry guilty of committing a prohibited act and assessed a sanction of 210 days in the "restorative housing unit" or Administrative Segregation (ADSEG), 120 days' loss of commutation time, and fifteen days' loss of core privileges. Based on Curry's allegations of protocol violation, the DHO referred the matter to the Special Investigations Division for further investigation.

DHO Zimmerman's decision was reviewed by Assistant Superintendent Griffith. Griffith upheld Zimmerman's decision, specifically including findings regarding the DOC's compliance with procedural safeguards, presumably the number of officers assigned to extract Curry from his cell and bring him to the medical unit. Griffith also upheld the sanctions imposed and the declination of leniency.

On appeal, Curry raises a single argument in his initial merits brief:

POINT I

The Plaintiff Argues [t]he New Jersey Department [o]f Corrections Violated Procedure [a]nd Protocol [i]n [t]he Guilt Finding.

5                                                    A-1999-22

In a reply brief, Curry raises a second argument:

POINT [II]

THE DEPARTMENT'S FINAL DECISION SHOULD BE REVERSED DUE TO THE NON-EXISTENCE OF THE WRITER FOR THE DISCIPLINARY REPORT AND PLAINTIFF'S LACK OF ABILITY TO CONFRONT THIS INDIVIDUAL.

Appellate review of a final decision made by the DOC is "limited." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). As we have long recognized, "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). "We [therefore] defer to an agency decision, and do not reverse unless it is arbitrary, capricious or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010); see also In re Stallworth, 208 N.J. 182, 194 (2011) ("A reviewing court 'may not substitute its own judgement for the agency's, even though the court might have reached a different result.'" (quoting In re Carter, 191 N.J. 474, 483 (2007))). This customary deference stems from the "[w]ide discretion [ ] afforded to administrative

A-1999-22

decisions because of an agency's specialized knowledge." <u>In re Request to Modify Prison Sentences</u>, 242 N.J. 357, 390 (2020).

Applying these well-settled principles, we affirm the DOC's final agency decision. Here, the DHO relied on sufficient and substantial credible evidence to conclude that appellant refused reasonable steps taken to address his health complaints. As documented, the presence of additional officers was needed based on appellant's history of violent infractions and his housing in a heightened security "Emergency Confinement Unit." In that regard, reasonable steps implemented to ensure the safety of all concerned -- including the assignment of extra personnel -- are not within the province of an inmate to unilaterally dictate or refuse. This is particularly so when such steps are taken for the ultimate benefit of the inmate, as was the circumstance here. Curry points to no provision of the New Jersey Administrative Code that was transgressed during the incident in question. Accordingly, we are satisfied that the DOC's findings were based on substantial reliable evidence and that the sanctions imposed were proportionate to the offense found.

In his reply brief, Curry advances a second argument. Our case law does not allow an appellant to raise a new argument in reply. <u>See</u> <u>State v. Smith</u>, 55 N.J. 476, 488 (1970) (stating that it is improper to raise new issues in a reply

A-1999-22

brief).   Nonetheless, for purposes of completeness, we set forth verbatim the substance of Curry's second argument in which he refers to himself in the third person:

> In the present matter[,] Curry argues[ ] the individual named on the disciplinary report was not present for the incident nor is listed on the use of force, preliminary report[,] or any of the supplemental reports at all.  Yet, the DHO finding of guilt is due to accusations by others who did not complete the required form.  N.J.A.C. on10A:4-9.1.
>
> [(Emphases added) (citations reformatted).]

Section 10A:4-9.1 of the New Jersey Administrative Code reads:

> (a) When a violation of a prohibited act as identified in N.J.A.C. 10A:4-4, Inmate Prohibited Acts, has occurred, the DOC staff member or the staff of a contracted vendor who witnessed it or who has probable cause to believe that a prohibited act has occurred shall prepare Form 259 Disciplinary Report and forward it to the appropriate correctional supervisor.
>
> (b) The correctional supervisor may change the report to an On-The-Spot Disciplinary Report/Adjudication or forward it to the Disciplinary Hearing Officer or Adjustment Committee for further disposition.

Curry does not identify the individual(s) who purportedly made accusations against him without completing the proper disciplinary report form. Our examination of the record reflects that all evidence considered against Curry

8

consisted of reports prepared by identified DOC officers and staff with direct knowledge of the incident concerned.  Thus, we reject this argument.

To the extent we have not addressed them, all other arguments raised by appellant lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(D), (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1999-22