**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1137-24

CARMELLO PATIOUNGA,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted November 13, 2025 – Decided December 1, 2025

Before Judges Mayer and Vanek.

On appeal from the New Jersey Department of Corrections.

Carmello Patiounga, self-represented appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Christopher Weber, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Carmello Patiounga appeals from an October 31, 2024 final agency decision by the New Jersey Department of Corrections (DOC) finding him guilty of prohibited act *.204 (use of any prohibited substance such as drugs, intoxicants, or related paraphernalia not prescribed for the inmate by the medical or dental staff).  We affirm.

In September 2024, an officer at the correctional facility where Patiounga is housed ordered Patiounga to submit to a urine test as part of monitoring imposed due to a prior violation of prison policy related to drug use or possession.  The urine sample, analyzed by the DOC Laboratory, tested positive for THC.  The same sample was then analyzed at Atlantic Diagnostic Lab, which confirmed the positive result for THC.

The correctional facility charged Patiounga with committing prohibited act *.204.  The next day, a sergeant at the correctional facility served the charge on Patiounga, conducted an investigation, and referred the matter to a hearing officer.  The DOC also obtained a mental health evaluation to determine Patiounga's mental status and level of responsibility at the time of the infraction.  Patiounga was found competent and responsible for his actions.

At an October 11, 2024 hearing, with the assistance of counsel substitute, Patiounga pleaded not guilty.  He told the hearing officer:  "I've been trying hard

2

to do the right thing."  Relying on Patiounga, counsel substitute explained Patiounga "was off urine monitoring" at the time of this urine screen.  At the hearing, Patiounga was allowed to present witnesses on his own behalf and cross-examine adverse witnesses, but he declined to do so.

The hearing officer considered the testimony and evidence presented and found Patiounga guilty of prohibited act *.204.  The hearing officer concluded the two laboratory tests yielding positive results for THC were unrefuted. Moreover, the hearing officer found Patiounga presented nothing to rebut the evidence against him.  The hearing officer also determined Patiounga received sufficient due process.

After determining Patiounga's guilt, the hearing officer imposed the following sanctions:  120 days in the restorative housing unit; 180 days loss of commutation time; 365 days of urine monitoring; 365 days loss of telephone/television/radio privileges; permanent loss of contact visits; 30 days loss of recreation privileges; 30 days loss of commissary privileges; 30 days loss of kiosk/media; and 30 days loss of tablet/media.  The hearing officer considered Patiounga's continued use of drugs while in prison, his lack of respect for prison rules, his proffered excuses for his drug use, denial of his drug use, and his risk to the security and safety of the correctional facility due to his drug use.  The

A-1137-24

hearing officer also considered Patiounga's mental health evaluation and determined Patiounga was responsible for his actions.

Patiounga filed an administrative appeal from the hearing officer's decision. He requested leniency and argued that the infraction was the result of his ongoing substance abuse issues. Patiounga maintained he was previously enrolled in a "Drug Diversion Program," but he claimed the program did not exist at his correctional facility. Thus, he argued he lacked any ability to address his substance abuse problem. Because he was on the mental health roster at the correctional facility, Patiounga further argued his placement in the restorative housing unit compromised his mental well-being.

On October 31, 2024, the DOC upheld the hearing officer's guilty finding. The DOC's Assistant Superintendent found there was substantial evidence supporting the finding and Patiounga failed to proffer any evidence to refute the charge. Although he upheld the guilty finding, the Assistant Superintendent granted Patiounga's request for leniency as to the sanctions imposed. Thus, he vacated Patiounga's loss of telephone privileges and reduced the loss of his television and radio privileges to 120 days.

On appeal, Patiounga raises the following arguments:

4

POINT I

THE DISCIPLINARY HEARING OFFICER ERRED IN THE FINDING OF GUILT BECAUSE THERE IS NO ACTUAL DDP (DRUG DIVSERSON PROGRAM) AT NORTHERN STATE PRISON.

POINT II

THE DISCIPLINARY HEARING OFFICER VIOLATED THE STATUTE AND ADMINISTRATIVE CODE IN SANCTIONING APPELLANT TO [THE RESTORATIVE HOUSING UNIT] TIME THAT EXCEEDS THAT FOR A VULNERABLE PERSON FINDING GUILT IN THIS CASE.

POINT III

THE DISCIPLINARY HEARING OFFICER['S] FINDING OF GUILT IS IN VIOLATION OF THE STANDARD DUE TO THE TESTING WAS DONE IN ERROR PURSUANT TO THE URINE MONITORING WHICH WAS NOT AUTHORIZED.

Appellate review of a final decision by the DOC is "limited." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010) (first citing Circus Liquors, Inc. v. Middletown Twp. 199 N.J. 1, 9 (2009); and then citing In re Taylor, 158 N.J. 644, 656 (1999)). "Prisons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). "We defer to an agency decision and do not reverse

5

unless it is arbitrary, capricious or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010) (citing Bailey v. Bd. of Rev., 339 N.J. Super. 29, 33 (App. Div. 2001)). This deference stems from the "[w]ide discretion . . . afforded to administrative decisions because of an agency's specialized knowledge." In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020).

Applying these well-settled principles, we affirm the DOC's final agency decision. The hearing officer relied on sufficient and substantial credible evidence to find Patiounga guilty of prohibited act *.204. Two laboratory results confirmed Patiounga tested positive for THC. See N.J.A.C. 10A:3-5.11(d). Patiounga previously faced discipline for his drug use and drug possession while incarcerated. Further, Patiounga was offered an opportunity to call witnesses on his behalf at the hearing but declined to do so. Additionally, he was accorded a chance to confront and cross-examine the DOC's witnesses but elected not to do so. On this record, we are satisfied Patiounga received all process that was due.

We next consider and reject Patiounga's argument that the restorative housing unit sanction was improper and he should have been referred to a drug

treatment or drug diversion program under N.J.A.C. 10A:4-4.1(a)(6). Under this regulation, "[t]he Drug Diversion Program is offered to inmates found guilty of Category F infractions on a one-time-only basis. An inmate who repeats offenses in Category F is not eligible for the Drug Diversion Program and the associated suspension of sanctions." N.J.A.C. 10A:4-4.1(a)(6).[1]

Patiounga was ineligible for placement in the Drug Diversion Program due to his multiple drug-related infractions while incarcerated. The prison records reflect Patiounga had six prior drug use infractions which disqualified him from placement in the program.

Moreover, imposition of the restorative housing unit sanction was proper. Upon recommitting a Category F infraction, prohibited act *.204 becomes a Category B offense under N.J.A.C. 10A:4-4.1. A Category B offense provides a maximum restorative housing unit sanction of 120 days. See N.J.A.C. 10A:4-4.1(a)(2).

---

[1] Prohibited acts are subclassified into six categories of severity, Category A through F. See N.J.A.C. 10A:4-4.1. Category F acts permit an eligible inmate who is found guilty of specified infractions to participate in a substance abuse treatment program known as the Drug Diversion Program. N.J.A.C. 10A:4-4.1(a)(6). An inmate found guilty of a Category F offense "may result in placement in a [drug] treatment program if recommended by appropriate medical staff and/or imposition of one or more of the sanctions for infractions of Category B prohibited acts." Ibid.

A-1137-24

Nor was imposition of the restorative housing unit sanction a violation of the Isolated Confinement Restriction Act (ICRA), N.J.S.A. 30:4-82.5 to -82.11. Contrary to Patiounga's argument, restorative housing is not the equivalent of isolated confinement. "Isolated confinement" under the ICRA is defined as:

> [C]onfinement of an inmate in a correctional facility, pursuant to disciplinary, administrative, protective, investigative, medical, or other classification, in a cell or similarly confined holding or living space, alone or with other inmates, for approximately [twenty] hours or more per day in a State correctional facility . . . with severely restricted activity, movement, and social interaction. Isolated confinement shall not include confinement due to a facility-wide or unit-wide lockdown that is required to ensure the safety of inmates and staff.
>
> [N.J.S.A. 30:4-82.7.]

Patiounga failed to demonstrate, while in the restorative housing unit, he was confined to his cell for twenty or more hours per day. Nor did he provide evidence of severe restrictions regarding his activities, movements, and social interactions while in the restorative housing unit. Thus, we reject Patiounga's argument that the restorative housing unit sanction violated the ICRA.

We next consider Patiounga's argument that the urine screen, which led to the guilty finding for prohibited act *.204, was improper because he was no longer subject to the prior 365-day urine monitoring as a "zero tolerance"

8

sanction. Patiounga's argument is misplaced. The July 15, 2024 memorandum from the prison administrator, upon which Patiounga relies, reinstated contact visits but did not alter any of the other sanctions, including the 365-day urine monitoring.

To the extent we have not addressed any remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hawley

Clerk of the Appellate Division

A-1137-24