**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3801-19

DAVID SCIRICA,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted September 14, 2021 – Decided September 23, 2021

Before Judges Fisher and Smith.

On appeal from the New Jersey Department of Corrections.

James S. Friedman, attorney for appellant.

Andrew J. Buck, Acting Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Nicholas Falcone, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner David Scirica, an inmate at South Woods State Prison, appeals from a Department of Corrections (DOC) final decision finding that Scirica committed prohibited act *.252[1], encouraging others to riot, and imposing sanctions.  Scirica argues that the DOC's final decision was arbitrary and capricious and that the DOC violated his due process rights.  We affirm for the reasons set forth below.

Scirica was an inmate at Southern State Correctional Facility (SSCF).  On April 7, 2020, he was part of an inmate group, which was in close contact with persons diagnosed with COVID-19 symptoms being transferred to Housing Unit 2-Right (Unit 2R), the designated temporary "quarantine unit" at SSCF.  Two days later, on April 9, the first inmates were relocated into the unit without incident.  While the remaining inmates were being transferred to the unit, a disturbance broke out at approximately 9:30 p.m.  The inmates already in Unit 2R barricaded the dayroom, refused to leave, and demanded that no more inmates be transferred to the unit. Corrections officers issued several commands

---

[1]  On January 14, 2021 the New Jersey Department of Corrections adopted amendments to Title 10A Chapter 4 Inmate Discipline.  One of the amendments consolidated prohibited act *.252 encouraging others to riot with *.251 rioting. As such, the current administrative code reads "*.251 rioting or encouraging others to riot".  See N.J.C.A. 10A:4-4.1(a)(1) (2021); 53 N.J.R. 923(a) (May 17, 2021).

to the inmates to disperse and return to their bunks in order to report for the standard inmate count. They were directed to remain in their respective wings until 6:30 a.m. the next day.

The inmates ignored the verbal commands. Security camera video showed multiple inmates continuing to mill about Unit 2R after they had been ordered to disperse. The video also showed several inmates using phones and kiosks, standing on chairs, with some using a table to barricade the unit entrance.

Due to COVID-19 health and safety protocols, the newly transferred inmates were wearing face masks, making them difficult to identify. Inmate movement throughout the area blocked the officers' view of the bunks. Additional officers eventually entered the unit at 12:35 a.m., nearly three hours after the incident began, and ordered the inmates to their bunks. All sixty-three inmates in Unit 2R were secured, processed, and transported to South Woods State Prison. The last group of inmates was processed and transferred at 3:30 a.m. on April 10.

Scirica was charged with *.252, encouraging others to riot, a prohibited act under N.J.A.C. 10A:4-4.1(a). Scirica was represented by substitute counsel, and the DOC produced three officers for purposes of confrontation. The confrontation with the officers was not in-person, but limited to written

3

questions, as the DOC determined that in-person confrontation for sixty-three separate inmate hearings was too hazardous due to the COVID-19 pandemic. The DOC also required all inmates charged to use the same set of written questions, as the agency concluded that separate confrontation requests to the same DOC witnesses on the same issues would be repetitive and would disrupt facility operations. The DOC denied the inmates the opportunity to pose follow-up questions to the officers because of operational concerns. A prison administrator denied Scirica's request for a polygraph because the administrator determined there were "no issues or any other concerns noted that [could not] be addressed by the [h]earing [o]fficer at [the] hearing."

Scirica testified that he was on the phone in the dayroom while other inmates barricaded the dayroom door. Phone records confirmed that he used a dayroom phone starting at 9:31 p.m. and ending at 9:38 p.m. Scirica also presented inmate witness statements which he argued supported his position that he did not participate in the incident.

The hearing officer found sufficient credible evidence to support the following six findings:

> 1) Scirica was part of a group that received orders,
>
> 2) the orders were of such a nature that any reasonable person would have understood the orders,

3) the orders were loud enough that the entire group could have heard the orders,

4) Scirica had ample time to comply with the orders,

5) no inmate, including Scirica, complied with staff orders to disperse and return to their bunks, and that

6) Scirica was part of the group as evidenced by the escort reports.

The hearing officer found the phone records placed Scirica in the dayroom at the time of the incident. The hearing officer found "an [inmate's] specific role in the disturbance is not relevant. Whether [he] pushed the table against the gate himself, was walking back and forth from the wing to dayroom, was on the phone or kiosk without permission, or was yelling and cursing at staff and [inmates], his behavior can be viewed as non-compliant and therefore part of the overall disturbance. Any behavior that is not compliant with staff orders can be viewed as encouraging non-compliant behaviors from others." The hearing officer further found the inmate statements submitted on Scirica's behalf not credible. The hearing officer found Scirica guilty of encouraging others to riot, in violation of *.252. The DOC adopted the findings of the hearing officer in its final decision of May 12, 2020. Scirica appeals, making the following arguments:

A-3801-19

A. The Decision Below Must Be Reversed Because the DHO' Findings and Conclusions Were Not Based on Substantial Evidence In the Record…(Raised Below)

B. The Decision Below Must Be Reversed Because Scirica Was Denied His Right to Confrontation…(Raised Below)

C. The Decision Below Must Be Reversed Because Scirica Was Denied The Opportunity To Submit To A Polygraph Examination…(Raised Below)

Our role in reviewing the decision of an administrative agency is limited. In re Taylor, 158 N.J. 644, 656 (1999); Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). We will not upset the determination of an administrative agency absent a showing: that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980) (citing Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)).

DOC has broad discretion in all matters regarding the administration of a prison facility, including disciplinary infractions by prisoners. Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 583 (App. Div. 1999). Therefore, we may not vacate an agency's determination because of doubts as to its wisdom or because the record may support more than one result. De Vitis v. N.J. Racing Comm'n, 202 N.J. Super. 484, 489-90 (App. Div. 1985).

6

A prison disciplinary proceeding "is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." Avant v. Clifford, 67 N.J. 496, 522 (1975) (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). Thus, inmates are afforded certain limited due process protections when facing disciplinary charges. Malacow v. N.J. Dep't of Corr., 457 N.J. Super 87, 93 (App. Div. 2018) (discussing Avant, 67 N.J. at 525-33).

The discipline of prisoners for violations of rules and regulations rests solely within the discretion of the DOC. See, e.g., N.J.S.A. 30:1B-6, -10. The due process safeguards established by the DOC for the administration and implementation of inmate discipline are set forth in N.J.A.C. 10A:4-1.1 to -12.3. Pursuant to N.J.A.C. 10A:4-4.1(a):

> An inmate who commits one or more of the following numbered prohibited acts shall be subject to disciplinary action and a sanction that is imposed by a [hearing officer] . . . . Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . . Prohibited acts are further subclassified into five categories of severity (Category A through E) with Category A being the most severe and Category E the least severe.
>
> [N.J.A.C. 10A:4-4.1(a) (2017).]

A Category A offense, including prohibited act *.252, encouraging others to riot, "shall result in a sanction of no less than 181 days and no more than 365 days of administrative segregation[2] per incident." Ibid. A hearing officer's finding that an inmate committed a prohibited act must be supported by "substantial evidence." N.J.A.C. 10A:4-9.15(a).

Applying these principles, we discern no basis to disturb the DOC's decision. Although the inmates wore masks, the video evidence and reporting officers' statements exposed the inmates' non-compliance with the dispersal order. The hearing officer found the inmate statements not credible because the inmate-witnesses had the opportunity to collaborate on their stories while quarantined together after the incident. There was sufficient credible evidence in the record from which to find that Scirica defied repeated orders, refused to disperse, and return to his bunk to be counted. That conduct interfered with the facility's attempt "to manage th[e unit's] volatile environment." Russo, 324 N.J. Super. at 584.

---

[2] One of the amendments to N.J.A.C. 10A:4-4.1(a) changed the punishment parameters for a Category A offense. Now, inmates found guilty of a category A offense face a sanction of "five to 15 days in an Adjustment Unit and up to 365 days in a Restorative Housing Unit (R.H.U.) per incident . . . ." N.J.A.C. 10A:4-4.1(a)(1) (2021).

A-3801-19

We reject Scirica's assertion that he was denied due process. Although inmates are not entitled to the same due process protections as criminal defendants, they are guaranteed certain limited protections. See McDonald v. Pinchak, 139 N.J. 188, 194 (1995); Avant, 67 N.J. at 523. Scirica was: given written notice of the charge at least twenty-four hours before the hearing was originally scheduled; provided with counsel substitute; offered an opportunity to call and confront witnesses; and received a written statement of the evidence relied upon and the reasons for the discipline. In view of the sheer volume of inmates charged in this one incident and the ongoing pandemic impact on facility operations, we reject Scirica's argument that he was improperly denied the right to submit individual confrontation questions. As to follow-up questions, N.J.A.C. 10A:4-9.13(e) states that hearing officers may deny requests "to ask certain questions . . ." so long as "the reasons for the denial [are] . . . specifically set forth on the Adjudication of Disciplinary Report." N.J.A.C. 10A:4-9.13(e). Here, the hearing officer denied follow-up questions because of the time and operational constraints associated with adjudicating sixty-three separate disciplinary hearings during the ongoing pandemic. We find nothing in the record to suggest that the DOC's considered use of its discretion here was arbitrary, capricious, or unreasonable.

Finally, Scirica argues that he was improperly denied the opportunity to take a polygraph examination. We disagree. We have long recognized an inmate does not have the right to a polygraph test to contest a disciplinary charge. Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997). "An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). Indeed, N.J.A.C. 10A:3-7.1(c) "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div. 2005). A "prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be reversed only when that determination is 'arbitrary, capricious or unreasonable.'" Id. at 24. "[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Id. at 20.

In the present matter, the administrator determined all issues raised by Scirica could be decided by the hearing officer. The administrator concluded, based on her evaluation of Scirica's request, charge package, and evidence, that

10

a polygraph was unnecessary. We are satisfied that the administrator's determination was not arbitrary, capricious, or unreasonable. Id. at 24. To the extent we have not specifically addressed Scirica's remaining contentions, we find they lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3801-19