**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3966-19

DAVID CONNOLLY,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted December 14, 2021 – Decided February 9, 2022

Before Judges Currier and Smith.

On appeal from the New Jersey Department of Corrections.

David Connolly, appellant pro se.

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Daniel S. Shehata, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner David Connolly, an inmate at South Woods State Prison, appeals from a Department of Corrections (DOC) final decision finding that Connolly committed prohibited act *.252[1], encouraging others to riot, and imposing sanctions. Connolly argues that the DOC's final decision was arbitrary and capricious and that the DOC violated his due process rights. We affirm for the reasons set forth below.

Connolly was an inmate at Southern State Correctional Facility (SSCF). On April 7, 2020, he was part of an inmate group, which was in close contact with persons diagnosed with COVID-19 symptoms being transferred to Housing Unit 2-Right (Unit 2R), the designated temporary "quarantine unit" at SSCF. Two days later, on April 9, the first inmates were relocated into the unit without incident. While the remaining inmates were being transferred to the unit, a disturbance broke out at approximately 9:30 p.m. The inmates already in Unit 2R barricaded the dayroom, refused to leave, and demanded that no more inmates be transferred to the unit. Corrections officers issued several commands

---

[1] On January 14, 2021 the New Jersey Department of Corrections adopted amendments to Title 10A Chapter 4 Inmate Discipline. One of the amendments consolidated prohibited act *.252 encouraging others to riot with *.251 rioting. As such, the current administrative code reads "*.251 rioting or encouraging others to riot". See N.J.C.A. 10A:4-4.1(a)(1) (2021); 53 N.J.R. 923(a) (May 17, 2021).

A-3966-19

to the inmates to disperse and return to their bunks in order to report for the standard inmate count. They were directed to remain in their respective wings until 6:30 a.m. the next day.

The inmates ignored the verbal commands. Security camera video showed multiple inmates continuing to mill about Unit 2R after they had been ordered to disperse. The video also showed several inmates using phones and kiosks, standing on chairs, with some using a table to barricade the unit entrance.

Due to COVID-19 health and safety protocols, the newly transferred inmates were wearing face masks, making them difficult to identify. Inmate movement throughout the area blocked the officers' view of the bunks. Additional officers eventually entered the unit at 12:35 a.m., nearly three hours after the incident began, and ordered the inmates to their bunks. All sixty-three inmates in Unit 2R were secured, processed, and transported to South Woods State Prison. The last group of inmates was processed and transferred at 3:30 a.m. on April 10.

Connolly was charged with *.252, encouraging others to riot, a prohibited act under N.J.A.C. 10A:4-4.1(a). Connolly was represented by substitute counsel and pleaded not guilty to the charge. The DOC produced three officers for purposes of confrontation. The confrontation with the officers was not in-

A-3966-19

person, but limited to written questions, as the DOC determined that in-person confrontation for sixty-three separate inmate hearings was too hazardous due to the COVID-19 pandemic. The DOC also required all inmates charged to use the same set of written questions, as the agency concluded that separate confrontation requests to the same DOC witnesses on the same issues would be repetitive and would disrupt facility operations. The DOC denied the inmates the opportunity to pose follow-up questions to the officers because of operational concerns. A prison administrator denied Connolly's request for a polygraph because the administrator determined there were "no issues or any other concerns noted that [could not] be addressed by the [h]earing [o]fficer at [the] hearing." At the hearing, Connolly admitted to being one of the sixty-three inmates housed in Unit 2R who refused to comply with the orders to disperse.

The hearing officer found sufficient credible evidence to support the following six findings:

> 1) Connolly was part of a group that received orders;
>
> 2) the orders were of such a nature that any reasonable person would have understood the orders;
>
> 3) the orders were loud enough that the entire group could have heard the orders;
>
> 4) Connolly had ample time to comply with the orders;

A-3966-19

5) no inmate, including Connolly, complied with staff orders to disperse and return to their bunks; and

6) Connolly was part of the group as evidenced by the escort reports.

The hearing officer rejected Connolly's argument that he was not guilty because he could not be identified on camera as one of the inmates barricading the dayroom. The hearing officer found there was "no requirement[] to be the 'main individual' to be [found] guilty" of violating *252. The DOC adopted the findings of the hearing officer in its final decision of May 7, 2020. Connolly appeals, contending that his due process rights were violated because he was denied access to the evidence against him and that he was not given fair opportunity to challenge the evidence against him. He also contends that the finding of guilt against him was not based on substantial credible evidence in the record.

Our role in reviewing the decision of an administrative agency is limited. In re Taylor, 158 N.J. 644, 656 (1999); Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). We will not upset the determination of an administrative agency absent a showing: that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated

legislative policies. <u>Henry v. Rahway State Prison</u>, 81 N.J. 571, 579-80 (1980) (citing <u>Campbell v. Dep't of Civ. Serv.</u>, 39 N.J. 556, 562 (1963)).

DOC has broad discretion in all matters regarding the administration of a prison facility, including disciplinary infractions by prisoners. <u>Russo v. N.J. Dep't of Corr.</u>, 324 N.J. Super. 576, 583 (App. Div. 1999). Therefore, we may not vacate an agency's determination because of doubts about its wisdom or because the record may support more than one result. <u>De Vitis v. N.J. Racing Comm'n</u>, 202 N.J. Super. 484, 489-90 (App. Div. 1985).

A prison disciplinary proceeding "is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." <u>Avant v. Clifford</u>, 67 N.J. 496, 522 (1975) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 480 (1972)). Thus, inmates are afforded certain limited due process protections when facing disciplinary charges. <u>Malacow v. N.J. Dep't of Corr.</u>, 457 N.J. Super 87, 93 (App. Div. 2018) (discussing <u>Avant</u>, 67 N.J. at 525-33).

The discipline of prisoners for violations of rules and regulations rests solely within the discretion of the DOC. <u>See, e.g.</u>, N.J.S.A. 30:1B-6, -10. The due process safeguards established by the DOC for the administration and

implementation of inmate discipline are set forth in N.J.A.C. 10A:4-1.1 to -12.3.

Pursuant to N.J.A.C. 10A:4-4.1(a):

> An inmate who commits one or more of the following numbered prohibited acts shall be subject to disciplinary action and a sanction that is imposed by a [hearing officer] . . . . Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . . Prohibited acts are further subclassified into five categories of severity (Category A through E) with Category A being the most severe and Category E the least severe.
>
> [N.J.A.C. 10A:4-4.1(a) (2017).]

A Category A offense, including prohibited act *.252, encouraging others to riot, "shall result in a sanction of no less than 181 days and no more than 365 days of administrative segregation[2] per incident." Ibid. A hearing officer's finding that an inmate committed a prohibited act must be supported by "substantial evidence." N.J.A.C. 10A:4-9.15(a).

Applying these principles, we discern no basis to disturb the DOC's decision.

---

[2] One of the amendments to N.J.A.C. 10A:4-4.1(a) changed the punishment parameters for a Category A offense. Now, inmates found guilty of a category A offense face a sanction of "five to 15 days in an Adjustment Unit and up to 365 days in a Restorative Housing Unit (R.H.U.) per incident . . . ." N.J.A.C. 10A:4-4.1(a)(1) (2021).

Connolly's unsupported due process assertion that he was denied access to evidence or the opportunity to confront witnesses is belied by the record. Each of the sixty-three inmates subject to DOC discipline received discovery. The record shows evidence produced during the investigation yielded several statements as well as surveillance videos. Connolly received answers to written interrogatories from corrections officers in lieu of live testimony. Although inmates are not entitled to the same due process protections as criminal defendants, they are guaranteed certain limited protections. See McDonald v. Pinchak, 139 N.J. 188, 194 (1995); Avant, 67 N.J. at 523. Connolly was: given written notice of the charge at least twenty-four hours before the hearing was originally scheduled; provided with counsel substitute; offered an opportunity to call and confront witnesses; and received a written statement of the evidence relied upon and the reasons for the discipline. In view of the sheer volume of inmates charged in this one incident and the ongoing pandemic impact on facility operations, we reject Connolly's argument that he was improperly denied due process. As to follow-up questions, N.J.A.C. 10A:4-9.13(e) states that hearing officers may deny requests "to ask certain questions . . ." so long as "the reasons for the denial [are] . . . specifically set forth on the Adjudication of Disciplinary Report." N.J.A.C. 10A:4-9.13(e). Here, the hearing officer denied

follow-up questions because of the time and operational constraints associated with adjudicating sixty-three separate disciplinary hearings during the ongoing pandemic. We find nothing in the record to suggest that the DOC's considered use of its discretion here was arbitrary, capricious, or unreasonable.

Turning to Connolly's argument that there was an insufficient factual basis to support the hearing officer's finding of guilt, we find again that the record undercuts this argument. Although the inmates wore masks, the video evidence and reporting officers' statements exposed the inmates' non-compliance with the dispersal order. The hearing officer found the inmate statements not credible because the inmate-witnesses had the opportunity to collaborate on their stories while quarantined together after the incident. There was sufficient credible evidence in the record from which to find that Connolly defied repeated orders, refused to disperse, and return to his bunk to be counted. That conduct interfered with the facility's attempt "to manage th[e unit's] volatile environment." Russo, 324 N.J. Super. at 584.

To the extent we have not specifically addressed Connolly's remaining contentions, we find they lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

A-3966-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3966-19