**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3969-19

VICTOR LOPEZ,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted February 17, 2022 – Decided March 2, 2022

Before Judges Alvarez and Mitterhoff.

On appeal from the New Jersey Department of Corrections.

Victor Lopez, appellant pro se.

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Chanell Branch, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Victor Lopez, an inmate at Bayside State Prison, appeals pro se from the May 6, 2020 final agency decision of the New Jersey Department of Corrections (DOC), which upheld an adjudication and sanctions for committing prohibited act *.252, encouraging others to riot, N.J.A.C. 10A:4-4.1(a). The charge stems from an incident that occurred on April 9, 2020 at Southern State Correctional Facility when petitioner and others were housed in a "quarantine unit" for inmates who had been in close contact with an inmate or staff member who was symptomatic with COVID-19. The facts of this incident are set forth in Disciplinary Hearing Officer DiBenedetto's report, so we do not recount them at length. After careful review of the record and in light of our deferential standard of review, we affirm.

We observe that the primary evidence supporting the charge against Lopez in particular is the fact that he placed a phone call that lasted approximately ten minutes at 10:15 p.m. after institutional "lock-up" had been called. On April 11, 2020, a Corrections Sergeant served the charge on Lopez, conducted an investigation, and referred the charge to a hearing officer for further action. The disciplinary hearing occurred on April 30, 2020. Lopez requested, and was granted, the assistance of a counsel substitute and pleaded "not guilty" to the

charge.  He was also granted confrontation with Officer Russo, Officer Valentine, and Lieutenant Ernest.

We note that Ernest stated when answering confrontation questions:

> Encouraging a riot exists whenever a group of inmates assaults any official, destroys state property, bands together to resist authority, refuses to return to their housing assignments, or causes an overt act which interferes with the orderly running of the institution or endangers the well[]being of any staff member or inmate.  Additionally, the incident is uncontrollable by the staff on duty at the time the situation develops.

After considering the hearing testimony and other evidence, Disciplinary Hearing Officer DiBenedetto found Lopez guilty of the charge.  She explained:

> [a]fter reviewing the evidence, every inmate had ample time to obey staff orders and should have followed direction.  While it is not known what each specific inmate's role was in the disturbance, the evidence supports that:
>
> 1.  The inmate was part of a group that received orders.  (PA system announced count up to 9:30pm) [;]
>
> 2.  The orders were of such a nature that any reasonable person would have understood the orders, (inmates were given several orders from officers & lieutenant to go down [to] their wings) [;]
>
> 3.  The orders were loud enough that the entire group could have heard the orders [;]

3

4. The inmate had ample time to comply with the order [;]

5. No inmate, after receiving warnings, complied with staff orders, (video shows [that] inmates did not disperse) [;]

6. This inmate was part of the group as evidenced by the escort reports. (A5-33 reports.) [.]

The above findings support that the inmate encouraged inmates to riot.

. . . .

Just because the inmate was not seen actually pushing the table, does not mean he wasn't involved by yelling, refusing orders and not being on his assigned bed during count. Staff reports they cannot identify any inmates not involved in the incident. No requirements to be "main individual" to be considered guilty. Any behavior that is not compliant with staff orders can be viewed as encouraging and inciting non[-]compliant behaviors.

Lopez received 210 days' administrative segregation, ninety days' loss of commutation time, and ten days' loss of recreation privileges. In imposing these sanctions, the hearing officer found:

In prison culture, said behaviors must be taken extremely seriously and cannot be tolerated. Inmate[']s behaviors could have led to violence and injuries for staff and inmates. Orders are mandatory and must be followed immediately. Inmate[']s actions caused SOG, central transportation, [and] the K9 units' unit to be

4

dispatched and mass overtime as the entire second shift was mandatory due to this incident. Said behaviors cannot be tolerated and any future behavior of this type must be deterred for safety and security purposes. Prison[]s function on order. No mental health evaluation noted. Inmate[']s charge history noted. Leniency provided; max sanction not given for [C]ategory A charge.

Lopez appealed the hearing officer's decision, relying on a written statement submitted by his counsel substitute. On May 6, 2020, DOC upheld the guilty finding and the sanctions imposed.

Petitioner presents the following arguments for our consideration:

POINT I

THE DISCIPLINARY HEARING OFFICER'S FINDING OF GUILT ON THE CHARGE OF RIOT WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND THEREFORE IT MUST BE REVERSED.

POINT II

THE DENIAL OF DEFENDANT'S RIGHT TO RECEIVE A POLYGRAPH IN ACCORDANCE WITH N.J.A.C. 10A:3-7 WAS ARBITRARY AS WELL AS PRECONCEPTION DECIDED BY ADMINISTRATOR.

Our scope of review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable or not supported by

5

substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010).

We have long recognized that "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

"We are constrained to engage in a 'careful and principled consideration of the agency record and findings.'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). A hearing officer's findings must be "sufficiently specific under the circumstances of the particular case to enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon which the order is based afford a reasonable basis for such order." Lister v. J.B. Eurell Co., 234 N.J. Super. 64, 73 (App. Div. 1989) (quoting In N.J. Bell Tel.

Co. v. Commc'ns Workers of Am., 5 N.J. 354, 377 (1950)).  It is also well settled

that an agency's "interpretation of the law and the legal consequences that flow

from established facts are not entitled to any special deference."  Manalapan

Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

Pursuant to N.J.A.C. 10A:4-4.1(a):

> An inmate who commits one or more . . . numbered
> prohibited acts shall be subject to disciplinary action
> and a sanction that is imposed by a Disciplinary
> Hearing Officer . . . .  Prohibited acts preceded by an
> asterisk (*) are considered the most serious and result
> in the most severe sanctions . . . .  Prohibited Acts are
> further subclassified into six categories of severity
> (Category A through F) with Category A being the most
> severe and Category E the least severe and Category F
> containing an opportunity for inmates found guilty of
> specified infractions to participate in a substance-use
> disorder treatment program . . . , if eligible. . . .[1]

---

[1]  Under the version of N.J.A.C. 10A:4-4.1(a) in effect at the time of the April 9, incident, Category F did not exist, and a finding of guilt for a Category A offense, such as prohibited act *.252, carried with it "a sanction of no less than 181 days and no more than 365 days of administrative segregation per incident."  N.J.A.C. 10A:4-4.1(a) (2017).  The range of sanctions under N.J.A.C. 10A:4-4.1(a) was amended in 2021 so that now,

> [a] finding of guilt for any offense in Category A may
> result in a sanction of five to [fifteen] days in an
> Adjustment Unit and up to 365 days in a Restorative
> Housing Unit (R.H.U.) per incident and one or more of the
> sanctions listed at N.J.A.C. 10A:4-5.1(e), unless a medical
> or mental health professional determines that the inmate is
> not appropriate for R.H.U. placement.  Where a medical

To find an inmate guilty of a prohibited act under N.J.A.C. 10A:4-4.1, a hearing officer must have substantial evidence of an inmate's guilt. N.J.A.C. 10A:4-9.15(a). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

In light of these principles, we reject Lopez's argument that there was an insufficient factual basis to support the hearing officer's finding of guilt as the record undercuts this argument. Although the inmates wore masks, the video evidence and reporting officers' statements exposed the inmates' non-compliance with the dispersal order. The hearing officer found the inmate statements not credible because the inmate-witnesses had the opportunity to collaborate on their stories while quarantined together after the incident. There was sufficient credible evidence in the record from which to find that Lopez defied repeated orders and refused to disperse and return to his bunk to be counted. That conduct interfered with the facility's attempt "to manage th[e unit's] volatile environment." Russo, 324 N.J. Super. at 584.

_____

or mental health professional has made such a determination, the inmate may receive one or more of the less restrictive sanctions listed at N.J.A.C. 10A:4-5.1(e).

A-3969-19

We also reject Lopez's argument that he was improperly denied the opportunity to take a polygraph examination. We have long recognized an inmate does not have the right to a polygraph test to contest a disciplinary charge. Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997). "An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). Indeed, N.J.A.C. 10A:3-7.1(c) "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div. 2005). "[A] prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be reversed only when that determination is 'arbitrary, capricious or unreasonable.'" Id. at 24. "[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility, and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Id. at 20.

In the present matter, the administrator determined all issues raised by Lopez could be decided by the hearing officer. The administrator concluded, based on her evaluation of Lopez's request, charge package, and evidence, that

a polygraph was unnecessary.   We are satisfied that the administrator's determination was not arbitrary, capricious, or unreasonable.  Id. at 24.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION